UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOLYSSA EDUCATIONAL | : | |
| DEVELOPMENT, LLC and ROBERT A. | : | |
| SPADA, | : | |
|     Plaintiffs, | : | |
| | : | |
| v. | : | 3:11-cv-1503-WWE |
| | : | |
| BANCO POPULAR NORTH AMERICA, | : | |
|     Defendant. | : | |

**MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS**

Plaintiffs JoLyssa Educational Development, LLC ("JoLyssa") and Robert Spada ("Spada") filed this action against defendant Banco Popular North America ("Banco Popular") alleging negligence, breach of contract, fraud, and violation of the Connecticut Unfair Trade Practices Act ("CUTPA"). Specifically, plaintiffs allege that Banco Popular improperly approved a business loan to plaintiffs which caused plaintiffs to incur losses and go into bankruptcy.

Defendant has moved to dismiss each of the four counts based on statute of limitations defenses and for failure to state a claim. For the following reasons, defendant's motion to dismiss will be granted.

**BACKGROUND**

For purposes of this decision, the Court accepts plaintiffs' allegations as true and draws all inferences in favor of plaintiff.

In June 2006, Spada executed a franchise agreement pursuant to which he became a Huntington Learning Center franchisee. Huntington encouraged plaintiffs to use The Business Resource Store as a loan consultant to help plaintiffs obtain an SBA loan.

In 2007, JoLyssa, by its sole member Spada, applied to Banco Popular for an SBA federally guaranteed loan for the build-out and operating capital for a Huntington Learning Center franchise located in Manchester, Connecticut.  In connection with the loan application, Banco Popular requested that JoLyssa provide it with a pro forma financial projection.

Prior to submitting a pro forma to defendant, plaintiffs submitted projections to their loan consultant who increased the projections "to satisfy Banco Popular."  Thus, the final pro forma that plaintiff submitted to Banco Popular contained future projections that were unrealistic and inflated in order to create the appearance that the franchisee would be able to repay the loan.

Unbeknownst to plaintiffs, Huntington routinely referred franchisees to The Business Resource Store (the loan consultant) which in turn routinely sent Huntington franshisees to Banco Popular for SBA guaranteed loans.  Plaintiffs allege that Banco Popular knew that the pro forma prepared for plaintiffs was not based on the experience of other Huntington franchisees. Further, defendant knew or should have known that plaintiffs would likely go into default based on the historical performance of Huntington franchisees.  As a direct result of approving the SBA loan for JoLyssa, guaranteed by Spada, plaintiffs were able to construct, open, operate and, after losing significant sums of money, ultimately fail in the operation of the Huntington Learning Center franchise in Manchester, Connecticut.

Plaintiffs assert that Banco Popular knew that plaintiffs would not be able to repay the loan with revenues, and that defendant planned to use Spada's equity in his home to pay off the loan.

On October 30, 2008, Spada closed his Huntington franchise.  Spada made payments to defendant through 2008, and defendant continued to send monthly statements to Spada into

2

2011.  On December 29, 2009, Spada filed for bankruptcy.  Defendant Banco Popular is a creditor in that proceeding.

Plaintiffs assert that if defendant had done its due diligence, JoLyssa would never have received financing for the Huntington Learning Center and Spada would not have incurred losses in connection with the operation of the franchise and the repayment of the loan.  For example, Huntington's Uniform Franchise Offering Circular from April 1, 2006, showed that the average revenue of franchises in operation for one or more years was $468,442 in 2005.  Nevertheless, Banco Popular approved loans, including the loan to plaintiffs, on the basis of pro formas projecting revenues in the first year of operation of over $500,000.  Plaintiffs' pro forma projected total revenues of $523,000 in year one, $580,000 in year two, and $670,000 in year three.  Defendant knew that plaintiffs' actual income from the franchise would not allow plaintiffs to repay the loan, but instead of disclosing that fact to plaintiffs, defendant protected itself by securing a mortgage on Spada's home.

Defendant responds that plaintiffs themselves submitted the loan application with inflated revenue projections.  The claim that Banco Popular should have rejected plaintiffs' loan application and not provided the loan, because Banco Popular knew or should have know better than plaintiffs that the revenue projections were too high, is not credible.  Furthermore, defendant argues that Spada's mortgage gave Banco Popular little protection because it was a third mortgage and the prior two mortgages exceeded the value of Spada's home.  Defendant contends that it had no motive to make a loan without expectation of repayment and points to plaintiff Spada's thirty years of experience in finance as indication of a level playing field.

**DISCUSSION**

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). A plaintiff is obliged to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Plaintiffs assert claims of negligence, breach of contract, fraud, and unfair trade practices (CUTPA) against their lender, Banco Popular. Defendant argues that all of plaintiffs' claims are time-barred and fail to state a claim upon which relief can be granted.

**(1) Negligence**

In Connecticut, negligence claims are subject to a two year statute of limitations and a three year statute of repose. Conn. Gen. Stat. § 52-584 provides in relevant part that "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of . . . ."

4

Plaintiffs' loan from defendant closed on April 30, 2007, almost four and one-half years before plaintiffs filed this action on September 29, 2011.  Normally, "the relevant date of the act or omission complained of, as that phrase is used in § 52-584, is the date when the negligent conduct of the defendant occurs and . . . not the date when the plaintiff first sustains damage." Sherwood v. Danbury Hospital, 252 Conn. 193, 202 (2000) (internal quotations omitted). However, the statute of limitations may be tolled under the continuing course of conduct doctrine where breach of a duty remained in existence after the commission of the original wrong.  Id. at 203.  Here, plaintiffs claim that defendant's continued conduct of sending monthly statements to Spada and Spada's continued loan payments to defendant should toll the statute of limitations. Essentially, plaintiffs argue that as long as defendant continued to seek payments on the loan, defendant remained negligent.  In other words, defendant had a duty to plaintiffs to desist its attempts to collect on the loan, and failure to desist constituted a continued breach of that duty.

An essential element of actionable negligence is a breach of a duty owed to the person injured.  "A duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." Prosser & Keeton on Torts, § 53 (5th ed. 1984).  "A simple conclusion that the harm to the plaintiff was foreseeable, however, cannot by itself mandate a determination that a legal duty exists.  Many harms are quite literally "forseeable," yet for pragmatic reasons, no recovery is allowed."  Perodeau v. City of Hartford, 259 Conn. 729, 756 (2002).  Here, plaintiffs applied for and obtained a loan from defendant in an arm's-length transaction.  There is no evidence that plaintiffs were unable to protect their own interests.  See Hi-Ho Tower, Inc. v. Com-Tronics, Inc., 255 Conn. 20, 41 (2000).  Plaintiffs spent the loan proceeds on their unsuccessful business

venture.  The Court will not hold that defendant had a continuing duty to refrain from collecting

on the debt regardless of plaintiffs' claim that defendant negligently granted the loan in the first

place.  To so hold would open to door for all debtors to potentially discharge their debt merely by

claiming that their lender was negligent - initially by lending the money - and continually by

attempting to collect.

Defendant's attempts to collect loan payments from plaintiffs did not invoke the

continuing course of conduct doctrine.  Therefore, plaintiffs' negligence claim is barred by

Section 52-584's statute of limitations and will be dismissed.

**(2) Breach of Contract**

Plaintiffs' amended complaint states that "Banco Popular materially breached its

contracts with plaintiffs, multiple times and in multiple ways."  More specifically, it provides that

defendant insisted that Spada secure unpaid sums with a mortgage on Spada's home.  Further,

defendant failed to provide plaintiffs with full disclosure, material information, and agreed-upon

services, constituting a breach of the agreement, including the implied covenant of good faith and

fair dealing.

"Every contract carries an implied covenant of good faith and fair dealing requiring that

neither party do anything that will injure the right of the other to receive the benefits of the

agreement. . . To constitute a breach of that covenant, the acts by which a defendant allegedly

impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive

under the contract must have been taken in bad faith."  Alexadru v. Strong, 81 Conn. App. 68,

80-81 (2004).  Here, plaintiffs have alleged in a general manner that defendant failed to fulfil its

contractual obligations.  However, plaintiffs' amended complaint lacks sufficient factual

allegations.  The accusations that defendant failed to uphold its end of the bargain by non-disclosure and non-performance of service, without specifying how, are labels and conclusions couched as factual allegations.  Likewise, it is unclear how a collateral requirement, in and of itself, constitutes a breach.  Therefore, plaintiffs' breach of contract claim will be dismissed.  However, plaintiffs will be given an opportunity to replead the breach of contract claim within fourteen days of this decision's filing date.

        **(3) Fraud**

        To satisfy Rule 9(b), a claim of fraud must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.  Bay Harbour Mgmt. LLC v. Carothers, 282 Fed. Appx. 71, 74 (2d Cir. 2008).

        Count Three alleges that defendant acted fraudulently in telling plaintiffs that they qualified for the loan.  Putting the subtlety of this "statement" aside, plaintiffs' fraud claim is time-barred because the loan was approved and closed on April 30, 2007, almost four and one-half years before plaintiffs filed this action on September 29, 2011.

        Common law fraud in Connecticut is subject to a three year statute of limitations.  See Conn. Gen. Stat. § 52-577 ("No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."); see also T.F.T.F Capital Corp. v. Marcus Dairy, Inc., 33 F. Supp. 2d 122, 126 (D. Conn. 1999) (fraud claim subject to three year statute of limitations under § 52-577).  As with plaintiffs' negligence claim, the Court finds that defendant's attempts to collect loan payments did not toll the relevant statute of limitations.  Therefore, plaintiffs' fraud claim will be dismissed.

**(4) CUTPA**

Count Four of plaintiffs' amended complaint alleges violation of CUTPA.  Count Four merely provides that defendant's "above-mentioned conduct constitutes immoral, unethical, oppressive, unscrupulous, and otherwise unfair and deceptive acts and practices in the conduct of trade or commerce in violation of CUTPA, Conn. Gen. Stat. § 42-110b."

In Connecticut, CUTPA claims, like tort claims, are subject to a three year statute of limitations.  "Under Connecticut law, both the general tort statute of limitations and the CUTPA statute of limitations are occurrence statutes, meaning that the limitations period begins to run from the date of the act or omission complained of, rather than the date the cause of action has accrued or the injury has occurred."  RBC Nice Bearings, Inc. v. Peer Bearing Co., 676 F. Supp. 2d 9, 34 (D. Conn. 2009).  Here, again, plaintiff's amended complaint is based on defendant's decision to approve plaintiffs loan application.  That decision was made more than four years before plaintiffs filed this complaint.  Therefore, plaintiffs' CUTPA claim will be dismissed.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is GRANTED.  However, plaintiffs may replead their breach of contract claim within fourteen days of this decision's filing date.

Dated this 19th day of September, 2012 at Bridgeport, Connecticut.


_____/s/_____
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE

8