UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOLYSSA EDUCATIONAL | : | |
| DEVELOPMENT, LLC and | : | |
| ROBERT A. SPADA, | : | |
|     Plaintiffs, | : | |
| v. | : | 3:11-cv-01503-WWE |
| | : | |
| BANCO POPULAR NORTH | : | |
| AMERICA, INC., | : | |
|     Defendant. | : | |

**MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS**

Plaintiffs JoLyssa Educational Development, LLC and Robert Spada filed a Second Amended Complaint [Doc. #38] alleging breach of contract against defendant Banco Popular North America ("Banco Popular"). Specifically, plaintiffs allege that Banco Popular improperly approved a business loan to plaintiffs, which caused plaintiffs to incur losses and go into bankruptcy.

Defendant has moved to dismiss the one remaining count for failure to state a claim. For the following reasons, defendant's motion will be granted.

**BACKGROUND**

For purposes of this decision, the Court accepts plaintiffs' allegations as true and draws all inferences in favor of plaintiffs.

In June 2006, Spada executed a franchise agreement pursuant to which he became a Huntington Learning Center franchisee. Huntington encouraged plaintiffs to use The Business Resource Store as a loan consultant to help plaintiffs obtain an SBA loan.

In 2007, JoLyssa, by its sole member Spada, applied to Banco Popular for an SBA federally guaranteed loan for the build-out and operating capital for a Huntington Learning

...

Center franchise located in Manchester, Connecticut. In connection with the loan application, Banco Popular requested that JoLyssa provide it with a pro forma financial projection.

Prior to submitting a pro forma to defendant, plaintiffs submitted projections to their loan consultant who increased the projections "to satisfy Banco Popular." Thus, the final pro forma that plaintiff submitted to Banco Popular contained future projections that were unrealistic and inflated in order to create the appearance that the franchisee would be able to repay the loan.

Unbeknownst to plaintiffs, Huntington routinely referred franchisees to The Business Resource Store (the loan consultant) which in turn routinely sent Huntington franchisees to Banco Popular for SBA guaranteed loans. Plaintiffs allege that Banco Popular knew that the pro forma prepared for plaintiffs was not based on the experience of other Huntington franchisees. Further, defendant knew or should have known that plaintiffs would likely go into default based on the historical performance of Huntington franchisees. As a direct result of approving the SBA loan for JoLyssa, guaranteed by Spada, plaintiffs were able to construct, open, operate and, after losing significant sums of money, ultimately fail in the operation of the Huntington Learning Center franchise in Manchester, Connecticut.

Plaintiffs assert that Banco Popular knew that plaintiffs would not be able to repay the loan with revenues, and that defendant planned to use Spada's equity in his home to pay off the loan.

On October 30, 2008, Spada closed his Huntington franchise. Spada made payments to defendant through 2008, and defendant continued to send monthly statements to Spada into 2011. On December 29, 2009, Spada filed for bankruptcy. Defendant Banco Popular is a creditor in that proceeding.

Plaintiffs assert that if defendant had done its due diligence, JoLyssa would never have received financing for the Huntington Learning Center and Spada would not have incurred losses in connection with the operation of the franchise and the repayment of the loan. For example, Huntington's Uniform Franchise Offering Circular from April 1, 2006, showed that the average revenue of franchises in operation for one or more years was $468,442 in 2005. Nevertheless, Banco Popular approved loans, including the loan to plaintiffs, on the basis of pro formas projecting revenues in the first year of operation of over $500,000. Plaintiffs' pro forma projected total revenues of $523,000 in year one, $580,000 in year two, and $670,000 in year three. Defendant knew that plaintiffs' actual income from the franchise would not allow plaintiffs to repay the loan, but instead of disclosing that fact to plaintiffs, defendant protected itself by securing a mortgage on Spada's home.

Defendant responds that plaintiffs themselves submitted the loan application with inflated revenue projections. The claim that Banco Popular should have rejected plaintiffs' loan application and not provided the loan, because Banco Popular knew or should have known better than plaintiffs that the revenue projections were too high, is not plausible. Furthermore, defendant argues that Spada's mortgage gave Banco Popular little protection because it was a third mortgage, and the prior two mortgages exceeded the value of Spada's home. Defendant contends that it had no motive to make a loan without expectation of repayment and points to plaintiff Spada's thirty years of experience in finance as indication of a level playing field.

This Court previously dismissed all of plaintiffs' claims but permitted them to replead their breach of contract claim with more specificity.

In response to the Court's prior Memorandum of Decision [Doc. #37], plaintiffs inserted

3

numerous additional factual allegations, identifying the following alleged "breaches" of the loan agreement:

> (1) The Commitment Letter provided:
>> This loan is further subject to approval by the U.S. Small Business Administration (SBA) under its 7(a) guaranty loan program. The Borrower(s) and Guarantor(s) agree to provide any additional information as required pursuant to the program and have full knowledge that the loan cannot close without SBA approval.
>
> (2) The Commitment Letter provided:
>> Bank reserves the right to cancel this commitment and to terminate the Bank's obligation hereunder by written notice to Borrower(s) at any time prior to the expiration date hereof without any liability or obligation to Borrower(s) or any guarantor if any one of the following events occurs: . . .
>>
>> Any event, action or inaction that, individually or in connection with other events, actions or inactions, would or could reasonably be expected to render untrue any warranty or representation made herein, cause any covenant made herein to be breached, or cause any condition precedent set forth to remain or become unfulfilled.

(3) On April 30, 2007, plaintiffs and defendant executed two Notes setting forth the terms of the loan and line of credit. These Notes refer to "Loan Documents," of which the Commitment Letter is one. Therefore, the terms of the Commitment Letter are incorporated into the Notes and form a part of the contract between plaintiffs and defendant.

(4) The federal regulations governing SBA loans are also incorporated into the Notes and form a part of the contract. Federal regulations require that SBA loans must be "so sound as to reasonable assure repayment." The SBA requires lenders to test the feasibility of loans.

(5) The terms of the Loan Documents including the Commitment Letter, required defendant to determine the accuracy of information upon which it would rely in making the loan and executing the note. However, defendant did not adequately assess plaintiffs' ability to repay the loan proceeds prior to executing the Notes and approving the loan.

(6) Defendant had access to industry data and Huntington's Uniform Franchise Offering Circular, which provided future earnings projections that were lower than those contained in the pro forma prepared by The Business Resource Store.

(7) Defendant failed to cancel the commitment when it knew or should have known it was relying on false information to make the loan.

(8) Defendant's failure to follow the regulations governing the SBA loan program constitutes a breach of the contract.

(9) Defendant's actions and inactions as described above constitute a material breach of the implied covenant of good faith and fair dealing.

(10) Plaintiffs performed pursuant to the contract by providing information to defendant through The Business Resource Store for defendant to evaluate the loan.  Plaintiffs further performed by making payments to defendant until such time as Robert Spada filed for bankruptcy protection.

(11) Any failure of plaintiffs to perform pursuant to the contract was excused by defendant's prior material breaches.

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984).  When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader.  Hishon v. King, 467 U.S. 69, 73 (1984).  The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).  A plaintiff is obliged to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**Contract vs. Tort**

First, defendant argues that plaintiffs' contract claim is a tort claim disguised as a breach of contract claim.  Accordingly, it should be barred by the two and three-year statutes of

limitations applicable to torts.[1]  See Conn. Gen. Stat. §§ 52-584 (negligence); 52-577 (torts generally).  The Connecticut Supreme Court recently described the difference between tort and breach of contract claims:

> [T]he fundamental difference between tort and contract lies in the nature of the interests protected.... The duties of conduct which give rise to [a tort action] are imposed by the law, and are based primarily upon social policy, and not necessarily upon the will or intention of the parties. . . . On the other hand, [c]ontract actions are created to protect the interest in having promises performed. Contract obligations are imposed because of [the] conduct of the parties manifesting consent, and are owed only to the specific individuals named in the contract. In short, [a]n action in contract is for the breach of a duty arising out of a contract; an action in tort is for a breach of duty imposed by law.

Bellemare v. Wachovia Mortg. Corp., 284 Conn. 193, 200 (2007) (internal citations omitted). Plaintiffs' breach of contract claim may be more appropriately characterized as sounding in tort. However, the Court need not explore the grey area between torts and contracts as plaintiffs have failed to state a plausible breach of contract claim, as discussed below.

**Breach of Contract Claim**

Second, defendant contends that plaintiffs have failed to state a breach of contract claim. "The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." Chiulli v. Zola, 97 Conn. App. 699, 707-08 (2006).

Here, plaintiffs allege that they performed pursuant to the contract by providing information to defendant through The Business Resource Store for defendant to evaluate the loan. Plaintiffs do not address their responsibility for the inaccuracy of the projections that they

---

[1] All of plaintiffs' tort claims were previously dismissed on statute of limitations grounds.

provided.  Nevertheless, plaintiffs have not plausibly alleged that defendant breached the agreement.

Defendant did not guarantee as part of the loan agreement that plaintiffs' business would be successful, yet plaintiffs allege that "[a]s a direct and proximate result of approving the SBA loan for JoLyssa, guaranteed by Spada, Plaintiffs were able to construct, open, operate and, after losing significant sums of money, ultimately fail in the operation of the Huntington Leaning Center franchise . . ."

Plaintiffs allege that if Banco Popular had done its due diligence, as required under the loan documents, plaintiffs would not have been damaged.  Nevertheless, plaintiffs have not demonstrated how a failure to perform due diligence constitutes breach of the contract in this case because defendants did not have a contractual duty to discover plaintiffs' inflated financial projections.

Failure to meet financial projections is common among start-up businesses.  According to the SBA, half of all new businesses in the United States fail within five years, and "[s]urvival among independent businesses and franchises appears to be similar . . ." OFFICE OF ADVOCACY, SMALL BUSINESS ASSOCIATION, FREQUENTLY ASKED QUESTIONS (2012) http://www.sba.gov/sites/default/files/FAQ_Sept_2012.pdf.

Essentially, plaintiffs argue that defendant had a duty to forgo or cancel its loan to plaintiffs because defendant should have known the financial projections that plaintiffs themselves submitted and represented as accurate were unrealistically optimistic.  No such duty exists.  Plaintiffs contend that Banco Popular failed to adequately test the feasibility of earnings projections against industry averages prior to executing the Notes, but plaintiffs similarly failed.

Although the loan was "subject to approval" by the SBA, federal regulations governing SBA loans were neither explicitly nor implicitly incorporated into the contract.  The Commitment Letter reserved defendant's right to cancel the commitment if plaintiffs' representations could reasonably have been expected to be rendered untrue, but it did not obligate defendant to discover or predict plaintiffs' inability to repay the loan.

Failure to detect misrepresentations in a borrower's loan application is not a breach of the loan contract, even where agency regulations require the lender to test feasibility to ensure soundness.  Likewise, a lender's imprudence in providing a loan does not implicitly repudiate that loan or make it voidable at the borrower's discretion.  Accordingly, plaintiffs' Second Amended Complaint again lacks sufficient factual allegations to establish a plausible breach of contract claim.

**Good Faith and Fair Dealing**

Finally, defendant argues that plaintiffs have failed to state a claim for violation of the duty of good faith and fair dealing.  "It is axiomatic that the ... duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship. . . . In other words, every contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement. . . .  To constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." De La Concha of Hartford, Inc. v. Aetna Life Ins. Co., 269 Conn. 424, 432-33 (2004).

Here, plaintiffs have not alleged that defendant injured their right to receive the benefits of the agreement.  Indeed, defendant lent plaintiffs over $300,000, which plaintiffs have not fully

8

repaid.  Plaintiffs merely allege that "Banco Popular's actions and inactions as described above constitute a material breach of the implied covenant of good faith and fair dealing." Paradoxically, plaintiffs seem to be arguing that defendant injured their right *not to receive* the benefits of the agreement.  Regardless, plaintiffs have failed to adequately allege bad faith.  Accordingly, plaintiffs' Second Amended Complaint again lacks sufficient factual allegations to establish a plausible breach of the covenant of good faith and fair dealing.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss [Doc. #42] is GRANTED.  The Clerk is instructed to close this case.

Dated this 14th day of May, 2012, at Bridgeport, Connecticut.

                                       /s/
                         WARREN W. EGINTON
                         SENIOR UNITED STATES DISTRICT JUDGE